UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SHRAVANTI REDDY,

Plaintiff,

-against-

THE SALVATION ARMY,

Defendant.
----------------------------------------------------------X

AMENDED COMPLAINT

06 CV 5176 (SAS) (AJP)
(Jury Trial Demanded)

Plaintiff Shravanti Reddy, by her attorney Scott A. Korenbaum, Esq., for her amended complaint, alleges as follows:

Preliminary Statement

1. Plaintiff Shravanti Reddy brings this action, pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, to redress the discrimination and retaliation she experienced at the hands of her former employer, The Salvation Army ("TSA"). Despite her qualifications for the job and her satisfactory job performance, TSA subjected Ms. Reddy to differing terms and conditions of employment than an identically situated white employee, and fired her from the position of Programs Analyst on January 13, 2005, after she complained that her supervisor, Sara Goldstein, was subjecting her to discriminatory treatment because of her race and national origin.

Jurisdiction and Venue

2. Because this action is brought pursuant to 42 U.S.C. § 1981, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Ms. Reddy's state law claim. Pursuant to 28 U.S.C. § 1391, venue is proper because the facts underlying Ms. Reddy's claims occurred in this district.

ADMINISTRATIVE PREREQUISITES

3. On April 25, 2005, Ms. Reddy filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

4. On or about March 16, 2006, the EEOC found reasonable cause to believe that the defendant had discriminated against her. Following unsuccessful efforts at conciliation, Ms. Reddy received a Right to Sue letter from the EEOC on April 10, 2006.

5. Ms. Reddy commenced this action within 90 days of her receipt of a right to sue letter.

6. Prior to the filing of this amended complaint, Ms. Reddy's counsel served a copy of this amended complaint upon the Office of the Corporation Counsel and the New York City Commission on Human Rights.

Parties

7. Ms. Reddy was born in India and is of Indian ancestry. Shortly after her birth she moved to the United States, where she has resided since. Ms. Reddy is a citizen of the United States. She resides in the State of New York, County of New York.

8. Defendant TSA is, upon information and belief, a not-for-profit corporation organized under the laws of the State of New York At all times relevant herein, it was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and the New York State and New York City Human Rights Laws.

Facts

9. In late January 2004, The Salvation Army hired Ms. Reddy for the position of Policy and Program Analyst in its Social Services for Children department (the "Department"), which was

located at its offices in Manhattan. Ms. Reddy's start date was February 9, 2004.

10. As Program and Policy Analyst, Ms. Reddy's responsibilities included, among others, writing grant proposals for the Department, as well as working to enhance and evaluate the direction and performance of all Department programs.

11. Ms. Reddy was well-qualified for the position. She holds a B.A from SUNY Binghamton in History, and an M.A. in International Affairs from Columbia University. She also had much experience working on an international scale in the areas of human rights, social justice and economic and social development, among others.

12. In June 2004, the TSA restructured its Social Services agencies, which led to the formation of The Salvation Army Social Services of Greater New York. Following this restructuring, Ms. Reddy's title officially changed to Program Analyst and she became part of a new Quality Assurance and Information Systems Department under the supervision of Sara Goldstein. While Ms. Reddy's title changed, her responsibilities remained largely the same. Ms. Reddy was also qualified for the position of Program Analyst.

13. Until the termination of her employment on January 13, 2005, Ms. Reddy held the position of Program Analyst.

14. As Program Analyst, Ms. Reddy's work was always satisfactory. Nonetheless, Ms. Goldstein singled her out for undue criticism, and treated her differently than Ms. Anna Raksany, a white woman who held the identical position of Program Analyst and who also reported to Ms. Goldstein.

15. For example, while all employees are subject to a 90 day probationary period, Ms. Goldstein extended Ms. Reddy's probationary period for an additional 90 days as a pretext for

discrimination, claiming that she (Goldstein) had not worked long enough with Ms. Reddy to evaluate her work, although she was able to evaluate Ms. Raksany, who had worked under her supervision for the same length of time as had Ms. Reddy.

16.     Perhaps more disturbingly, after she had unjustifiably extended Ms. Reddy's probationary period, Ms. Goldstein, in direct violation of its employment guidelines, violated TSA's confidentiality requirements when she informed Ms. Raksany that she had extended Ms. Reddy's probationary period.  Moreover, when Ms. Reddy complained, in writing, to management regarding this breach of confidentiality, her complaint fell on deaf ears.

17.     Ms. Goldstein repeatedly and unjustifiably criticized Ms. Reddy's work product; she rarely, however, criticized Ms. Raksany, and never reprimanded or disciplined her, for making the same amount and types of mistakes as she had made.  Ms. Goldstein issued Ms. Reddy a written warning for her written grammatical mistakes, but never issued Ms. Raksany a written warning for making the same minimal grammatical errors.  In fact, Ms. Goldstein told Ms. Raksany that she was a better writer than Ms. Reddy and requested that she review Ms. Reddy's written work.  Yet, when Ms. Raksany made several mistakes in a lengthy document, Ms. Goldstein acknowledged that time constraints and difficulties led to errors in the document and congratulated her on a job well done, which allowances she never extended to Ms. Reddy.

18.     Ms. Goldstein also placed Ms. Reddy under the proverbial microscope.  For example, even though Ms. Reddy was always punctual, she required Ms. Reddy to sign in each day.  Upon information and belief, Ms. Goldstein did not require Ms. Raksany to sign in and otherwise excused her tardiness.

19.     Ms. Goldstein also took steps to make Ms. Reddy's job more difficult.  For example,

at times Ms. Goldstein was assigned certain projects from her supervisors. In response, she would delegate the entire project to Ms. Reddy. On the occasions that Ms. Reddy told her that a particular project was too large for her to handle alone, Ms. Goldstein did not offer to split the workload with Ms. Raksany. In contrast, when Ms. Raksany was given a similar project, Ms. Goldstein decided that the work needed to be split between Ms. Raksany and Ms. Reddy.

20. Despite Ms. Goldstein's differential treatment of Ms. Reddy, Ms. Reddy performed her work in a satisfactory fashion. However, in December 2004, Ms. Goldstein's discriminatory treatment of Ms. Reddy escalated.

21. During a meeting held on December 13, 2004, Ms. Goldstein demeaned Ms. Reddy but treated Ms. Raksany respectfully in front of management, although Ms. Raksany was also airing grievances about Ms. Goldstein and had even initiated the meeting. Later that same day, Ms. Goldstein retaliated and harassed Ms. Reddy after everyone had left the office, and made it clear that her situation was not going to change and that she (Reddy) should accept it.

22. As a result of Ms. Goldstein's discriminatory treatment of her, Ms. Reddy submitted her first formal written complaint on December 15, 2004. Instead of responding in a meaningful manner, Dan Lockspeiser, Director of Programs and Ms. Goldstein's supervisor, entered the office that Ms. Reddy and Ms. Raksany shared. He told Ms. Reddy that her written complaint was "borderline over the top." In contrast, Mr. Lockspeiser made no comment to Ms. Raksany, even though she had also made unrelated complaints regarding Ms. Goldstein.

23. Following the December 13th meeting, and her December 15th written complaint, Ms. Goldstein continued her harassment of Ms. Reddy. As a result, she met with Mr. Lockspeiser on December 28th to report the harassment, discriminatory and retaliatory behavior of Ms. Goldstein.

In this meeting, Ms. Reddy explicitly told Mr. Lockspeiser that she believed Ms. Goldstein had discriminated against her because she is Indian.

24. Despite Ms. Reddy's requests, Mr. Lockspeiser refused to take meaningful actions, although he told Ms. Reddy to draft professional guidelines that must be adhered to during supervisory meetings between Ms. Reddy and Ms. Goldstein. Mr. Lockspeiser also told Ms. Reddy that he did not feel it was critical enough of a situation for him to get involved at this point. When she asked him why he did not believe discrimination warranted a greater response, he told her that she should put her concerns in writing.

25. On January 7, 2005, Ms. Reddy complied with Mr. Lockspeiser's request and committed her concerns regarding Ms. Goldstein, including her concerns that she was the victim of unlawful discrimination, to writing. Ms. Reddy's oral and written complaints were met with inaction by Mr. Lockspeiser, although one supervisor from a different department told Ms. Reddy that her actions were "seditious" and "rebellious," while another told her she should be a "good soldier." According to TSA guidelines, Ms. Reddy's complaint was confidential.

26. A mere six days later, on January 13, 2005, TSA terminated Ms. Reddy's employment because she allegedly acted in an insubordinate manner to Ms. Goldstein. TSA's stated reason was pretextual. Ms. Reddy was not insubordinate to Ms. Goldstein, and Ms. Goldstein and her supervisors knew it.

27. In terminating Ms. Reddy's employment, TSA failed to follow its own Employee Handbook, which indicated that Ms. Reddy should have been subjected to progressive discipline--if, in fact, she had acted in an insubordinate manner, which she had not.

FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1981--Disparate Treatment)

28. Plaintiff Shravanti Reddy repeats and realleges the allegations contained in paragraphs 1 through 27, as if fully set forth herein.

29. Ms. Reddy is Indian.

30. Ms. Reddy was qualified for the position of Program Analyst.

31. During the term of her employment with the TSA, Ms. Reddy was treated differently in the terms and conditions of her employment as the only similarly situated white employee.

32. On January 13, 2005, defendant fired Ms. Reddy from the position of Program Analyst.

33. The reason defendant provided to justify its decision to terminate Ms. Reddy's employment was pretextual.

34. As a result of defendant's discriminatory actions, Ms. Reddy has suffered both emotional and pecuniary damages.

SECOND CLAIM FOR RELIEF
(Title VII--Disparate Treatment)

35. Plaintiff Shravanti Reddy repeats and realleges the allegations contained in paragraphs 1 through 34, as if fully set forth herein.

36. TSA's discriminatory treatment of Ms. Reddy violates Title VII of the Civil Rights Act of 1964, as amended.

37. As a result of TSA's discriminatory treatment of her, Ms. Reddy has suffered both emotional and pecuniary damages.

FOR A THIRD CLAIM FOR RELIEF
(N.Y. Executive Law § 296)

38. Ms. Reddy repeats and realleges the allegations contained in paragraphs 1 through 37 above, as if set forth fully herein.

39. TSA's discriminatory treatment of Ms. Reddy violates New York Executive Law § 296.

40. As a result of TSA's discriminatory treatment of her, Ms. Reddy has suffered both emotional and pecuniary damages.

FOR A FOURTH CLAIM FOR RELIEF
(N.Y.C. Admin. Code § 8-107)

41. Ms. Reddy repeats and realleges the allegations contained in paragraphs 1 through 40 above, as if set forth fully herein.

42. TSA's discriminatory treatment of Ms. Reddy violates New York City Administrative Code § 8-107.

43. As a result of TSA's discriminatory treatment of her, Ms. Reddy has suffered both emotional and pecuniary damages.

FIFTH CLAIM FOR RELIEF
(42 U.S.C. § 1981--Unlawful Retaliation)

44. Plaintiff Shravanti Reddy repeats and realleges the allegations contained in paragraphs 1 through 43, as if fully set forth herein.

45. On or about December 28, 2004, and January 7, 2005, Ms. Reddy complained to TSA that she believed that Ms. Goldstein had discriminated against her on the basis of her race and/or national origin.

46. Less than one week later, on January 13, 2005, TSA terminated Ms. Reddy's employment. The stated reason, insubordination, was pretextual.

47. As a result of the unlawful retaliation she experienced, Ms. Reddy has suffered both emotional and pecuniary damages.

SIXTH CLAIM FOR RELIEF
(Title VII--Unlawful Retaliation)

48. Plaintiff Shravanti Reddy repeats and realleges the allegations contained in paragraphs 1 through 47, as if fully set forth herein.

49. TSA's decision to retaliate against Ms. Reddy violates Title VII of the Civil Rights Act of 1964, as amended.

50. As a result of TSA's retaliatory treatment of her, Ms. Reddy has suffered both emotional and pecuniary damages.

FOR A SEVENTH CLAIM FOR RELIEF
(N.Y. Executive Law § 296)

51. Ms. Reddy repeats and realleges the allegations contained in paragraphs 1 through 50 above, as if set forth fully herein.

52. TSA's decision to retaliate against Ms. Reddy violates New York Executive Law § 296.

53. As a result of TSA's retaliatory treatment of her, Ms. Reddy has suffered both emotional and pecuniary damages.

FOR AN EIGHTH CLAIM FOR RELIEF
(N.Y.C. Admin. Code § 8-107)

54. Ms. Reddy repeats and realleges the allegations contained in paragraphs 1 through 53 above, as if set forth fully herein.

55. TSA's decision to retaliate against Ms. Reddy violates New York City Administrative Code § 8-107.

56. As a result of TSA's retaliatory treatment of her, Ms. Reddy has suffered both emotional and pecuniary damages.

PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for the following relief:

(a) back pay in an amount to be determined at trial;

(b) front pay in an amount to be determined at trial;

(c) punitive damages in an amount to be determined at trial;

(d) compensatory damages, including damages for emotional distress, in an amount to be determined at trial;

(e) costs and expenses of this action;

   (f) reasonable attorneys' fees; and

(g) such other and further relief as is just and proper.

Dated: New York, New York
March 26, 2007

SCOTT A. KORENBAUM, ESQ.
Attorney for Plaintiff
111 Broadway, Suite 1305
New York, New York 10006
(212) 587-0018

By: /s/
Scott A. Korenbaum (SK-8305)